Citation Nr: 1755083 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 08-18 318 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to an initial rating in excess of 30 percent for depression prior to June 17, 2008, and 70 percent thereafter.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

K. Vuong, Associate Counsel



INTRODUCTION

The Veteran served on active duty from July 1989 to March 1994. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana, which granted service connection with an initial rating of 30 percent, effective February 21, 2006. 

In a December 2009 rating decision, the RO granted an increase to 50 percent, effective June 3, 2009. In an August 2010 rating decision, the RO granted an increase to 70 percent effective June 17, 2008. As these decisions constitute less than the maximum benefit allowed by law and regulation, the claim for an initial higher rating in relation to the service-connected depression remains on appeal. AB v. Brown, 6 Vet. App. 35, 38 (1993).

The Board remanded the case for additional development in February 2013 and March 2017. The additional development has been completed.


FINDING OF FACT

Resolving all reasonable doubt in the Veteran's favor, her depression has manifested in occupational and social impairment with deficiencies in most areas due to symptoms such as suicidal ideation and intent, depressed mood, chronic sleep impairment, decreased energy, diminished interest, irritability, and crying spells, without more severe manifestations that more nearly approximate total occupational and social impairment.



CONCLUSION OF LAW

During the entire appeals period, the criteria for a 70 percent, but no higher, disability rating for depression are met. 38 U.S.C. §§ 1155, 5107 (2014); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9434 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155 (2014); 38 C.F.R. § 4.1 (2017).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3 (2017). 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where, as here, the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of a staged rating are required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran seeks a higher initial rating for her depression which is rated at 30 percent from prior to June 17, 2008, and 70 percent thereafter.

The criteria for evaluating psychiatric disorders, other than eating disorders, are set forth in the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130 (2017). A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 38 C.F.R. § 4.130 DC 9411 (2017).

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); and disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130 DC 9411 (2017).

Consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of the examination. See 38 C.F.R. § 4.126 (a) (2017). Furthermore, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126 (b) (2017). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2 (2017).

Psychiatric examinations frequently include assignment of a GAF score. According to the Fourth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." GAF scores from 61 to 70 indicate some mild symptoms. GAF scores of 41 to 50 indicate serious symptoms. GAF score and interpretations of the score are important considerations in rating a psychiatric disability, and should be considered in light of all the evidence of record that bears on occupational and social impairment. See 38 C.F.R. § 4.126 (a) (2017); Richard v. Brown, 9 Vet. App. 266, 267 (1996); Carpenter v. Brown, 8 Vet. App. 240 (1995).

Treatment records show that the Veteran has consistently reported blunted affect, decreased energy and interest, fatigue, mood lability, crying spells, occasional forgetfulness, and panic attacks. See VA treatment records from July 2006, September 2006, May 2008, June 2008, April 2009, November 2009, July 2010, November 2011,November 2014, April 2015, July 2015, September 2015, and substantive appeal from June 2008 (reporting panic attacks 4 to 5 times per week). The Veteran reported that the symptoms often left her bed-ridden, or unable to leave the house for the duration of the day. See July 2007 and June 2008. Treatment records reveal GAF scores ranging from 42 to 50. See VA treatment records from July 2006, September 2006, and November 2007.

Treatment records also reflect suicide attempts, suicidal ideation, and in-patient hospitalization related to mental health issues. See VA treatment records from July September 2006 (noting an on-going passive death wish and active suicidal ideation with a plan to drive off the road); September 2008 (Veteran reported thinking about ending it all, suicidal thoughts, having a loaded gun in her room); November 2009 (where the Veteran reported thoughts of suicide); July 2010 (where the Veteran reported a suicide attempt in which she ran out into the middle of the street); April 2015 (where the Veteran reported driving her car into a tree, totaling the vehicle); and February 2009 hearing testimony before the decisional review officer (where the Veteran reported suicidal ideation in the summer of 2008 with attempted overdose and hospital admission). 

In July 2006 treatment records, a VA clinician noted that the Veteran's symptoms of depression, to include sadness, irritability, mood dysregulation, and suicidal ideation, have interfered with baseline level of functioning. In April 2015 VA treatment records, a clinician noted that the Veteran has an enduring pattern of inner experience that impacts daily functioning and relationships. The clinician noted that the Veteran's family stays with her around the clock; she cannot be alone; and the Veteran is unable to drive, shop or care for herself.

The Veteran was afforded an examination in October 2006. At the examination, the Veteran reported nightmares almost nightly, chronic sleep issues, and panic attacks once or twice a month. The Veteran reported not wanting to socialize, wanting to be by herself, crying spells four to five times per week, and an inability to concentrate. The Veteran was noted to be currently married, has an okay relationship with her underage son, a close relationship with her mother and had good friends she spoke with once a month. Upon examination, no issues were noted with speech, orientation, thought process, thought content, judgment, delusions, or psychomotor activity. The examiner did note constricted affect and depressed mood. Upon review of the Veteran's medical records, the examiner noted a May 2006 hospitalization for suicidal ideation. The examiner gave a diagnosis of major depressive disorder, recurrent, moderate, with depressed mood, decreased energy, diminished interest, irritability, crying spells, and problems. A GAF score of 50 was assigned. The examiner noted that the Veteran also has symptoms consistent with posttraumatic stress disorder (PTSD). The examiner indicated that there was reduced reliability and productivity with impact on family role functioning, interpersonal relationships, and occupational functioning. Ultimately, the examiner opined that both disorders appear to collectively cause moderate impairment in overall functioning. 
 
The Veteran underwent a Social Security Administration (SSA) examination in October 2008. She reported depression daily with feelings of hopelessness, worthlessness, and guilt. The Veteran also reported decreased interest, sleep, energy, concentration, and appetite. The Veteran disclosed previous suicide attempts and that she thinks of suicide daily. The examining clinician noted that the Veteran rocked forcefully and cried during the conversation with depressed mood and flat affect. No issues were noted with recall ability, thought process, speech, orientation, intelligence, impulsivity, insight, judgement. A GAF score of 70 was given. 

In December 2008, a different clinician and psychologist reviewed the October 2008 SSI examination report. Upon review, the clinician opined that GAF score seems high as the Veteran's functioning and ability to care for herself seems more limited than mild symptoms. Specifically, the clinician noted the Veteran needs helps with hygiene, does not cook, does not go into public alone, does not spend time with family or friend except talking to her mother once a week. The Veteran exhibited poor task completion, poor motivation, and isolation. The clinician noted that the Veteran appeared credible. The clinician endorsed moderate difficulties in activities of daily living, marked difficulties in social functioning and concentration, persistence with episodes of decompensation of extended duration. 

In a January 2011 determination, the SSA awarded benefits based, in part, on depression accepting the December 2008 report as probative. The SSA determination noted the Veteran's length treatment history, including several suicide attempts and hospitalizations. 

In a February 2009 hearing before a decisional review officer, the Veteran testified as to the symptoms she experienced. The Veteran testified that symptomatology included irritability, crying spells, confusion, forgetfulness, and a desire not to be with people. The Veteran testified that crying episodes and panic attacks occurred multiple times a week. The Veteran described a withdrawn relationship with her spouse, no close relationships, and no recreational or social interests. The Veteran reported suicidal ideation in the summer of 2008 with continued thoughts of suicide. 

Pursuant to the Board remand of February 2013, the Veteran was provided with a VA examination in September 2015. At the examination, the Veteran reported sleeping 1 to 2 hours in a 24 hour cycle, homicidal ideations, problems managing anger, social isolation, depressed mood most days, decreased interest in prior hobbies, intrusive thoughts, problems focusing or concentrating, panic almost daily, and crying daily. The Veteran disclosed issues with irritability and aggressive behavior in her relationships, including inflicting physical violence on partners and family members. The Veteran reported a continuing friendship from high school and one other friendship, maintaining contact with her mother, her sister, and adult son. The Veteran reported that she can no longer physically engage in hobbies like hair styling and cooking. The Veteran also reported six suicide attempts from 2008 through 2015, including running into traffic, drug overdose, having a loaded gun, cutting her arms, tying a plastic bag around her neck, and crashing her car into a tree. The Veteran indicated that her son, and previously mother, acts as a power of attorney for her financial matters as her mind is not stable. Upon examination, the examiner diagnosed the Veteran with unspecified depressive disorder with anxious distress, unspecified trauma and stressor related disorder, and borderline personality disorder. The examiner endorsed symptoms of depressed mood, anxiety, suspiciousness, near continuous panic or depression affecting ability to function independently, appropriately and effectively, chronic sleep impairment, impaired judgment, and motivation and mood disturbances. The examiner noted that symptoms attributable to depression include dysphoria, amotivation, anergia, negativism, and sleep impairment. The examiner opined that the Veteran has occupational and social impairment with deficiencies in most areas and that the examiner is unable to differentiate what portion of the impairment is caused by each mental disorder. The examiner explained that the disorders are chronic, comorbid, mutually worsen each other making differentiation highly speculative. Nonetheless, the examiner opined that personality disorder is the primary psychopathology contributing to functional impairment.

As directed in the March 2017 remand, the Veteran was afforded another examination to determine the current severity of her service-connected depression. The examination occurred in April 2017. At the examination, the Veteran reported some friendships, a good relationship with her mother whom she talks to every day, a great relationship with son who cares for her and phone communication with other relatives on a regular basis. The Veteran also reported a typical day of doing nothing, occasionally watching television with an inability to concentrate on more than that. The Veteran reported acting on aggression, with screaming and hitting, fifteen times per month. The examiner noted no visible evidence of remorse or regret. The Veteran denied suicidal or homicidal ideation but reported auditory hallucination and paranoia that government is spying on her. Upon examination, the examiner endorsed depressed mood, anxiety, chronic sleep impairment, difficulty establishing or maintaining relationships, difficulty adapting to stressful circumstance. The examiner provided diagnoses of borderline personality disorder, severe; major depressive disorder, recurrent and moderate; and other specified trauma and stressor related disorder. The examiner noted that borderline personality disorder causes significant impairment including transient suicidal ideation and gestures such as superficial cutting. The depression caused symptoms of depressed mood, chronic sleep impairment, and loss of interest. The other specified trauma and stressor related disorder resulted in sleep impairment and anxiety. The examiner noted that it is possible to differentiate what symptoms are attributed to each diagnosis. The examiner opined that the Veteran suffers from occupation and social impairment in most areas such as work, school, family relations, judgment, thinking and/or mood but it was not possible to differentiate what portion of the impairment is caused by each mental disorder because there is some overlap in symptomatology and the borderline personality disorder negatively affects the Veteran's ability to cope with symptoms of other mental disorders. 

Resolving all doubt in favor of the Veteran, the Board finds that her depression manifested with symptoms that more closely approximate the criteria for a 70 percent rating since the effective date of service connection.

As clearly reflected by the Veteran's competent and credible report regarding her symptoms and the VA clinical findings; deficiencies in the area of work, family relations, thinking, and mood have been demonstrated. The Veteran has competently and credibly reported that her symptoms include depression, forgetfulness, irritability, blunted affect, decreased energy and interest, fatigue, crying spells, social isolation, panic attacks, chronically impaired sleep, and suicidal ideation and intent. VA examiners and clinicians have opined that the Veteran has experienced occupational and social impairment as a result of her symptoms. The Board is also mindful of the Veteran's GAF scores throughout the appeal, which have ranged from 42 to 70 but have mostly been reflective of moderate to serious symptoms.
 
Work impairment is evidenced as the Veteran has reported an inability to work and a SSA determination has found that the Veteran is disabled due, in part, to her service-connected disability. Further, the Board notes that the Veteran is in receipt of a TDIU. Work impairment due to depressive symptoms is established. 

The Veteran's thinking and mood are also shown to have been impaired throughout the appeal, as reflected by chronic problems with depression, anxiety, irritability, poor concentration, social withdrawal and recurrent suicidal ideation and attempts. In July 2006 and April 2015, VA clinicians have noted that the Veteran's depression impacts baseline daily functioning and relationships. Further, the October 2006 examiner noted a negative impact on family role functioning, interpersonal relationships, and occupational functioning. The September 2015 and April 2017 examiner noted occupational and social impairment with deficiencies in most areas with symptoms of depressed mood, anxiety, suspiciousness, near continuous panic or depression affecting ability to function independently, appropriately and effectively, chronic sleep impairment, impaired judgment, and mood disturbances. 

As the evidence demonstrates that the Veteran has deficiencies in the areas of work, family role functioning, thinking, and mood; the Board finds that the criteria for a 70 percent rating are met. T

The Board has considered whether a rating higher than 70 percent is warranted, but finds that the Veteran does not meet the criteria for a 100 percent rating. The evidence does not demonstrate total occupational and social impairment due to the service-connected depression. Symptoms of a 100 percent rating include gross impairment of thought process and communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting oneself or others, intermittent inability to perform activities of daily living, disorientation to time or place, and loss of memory for names of close relative, own occupation, or own name. Despite some intermittent reports of homicidal ideation and suicidal ideation, and difficulties with employment, the Veteran has shown the ability to maintain close social relationships with her mother, her adult son, and her siblings. Thus she is not totally impaired on a social level. The Veteran's symptoms of social isolation, mood lability, irritability, chronic sleep issues, suicidal ideation and intent, and occasional forgetfulness, and anxiety have resulted in difficulties but have not generally not risen to the severity or frequency contemplated by those examples set forth in the 100 percent rating criteria. 

The Board has considered whether a staged rating is warranted; but, at no point during the appeal period have his symptoms or their functional effects more nearly approximated a total rating. Accordingly, the application of a staged rating is not warranted. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The Veteran is already in receipt of a total disability rating based on individual unemployability effective February 21, 2006. There are no additional expressly or reasonably raised issues presented on the record.


ORDER

Resolving reasonable doubt in favor of the Veteran, an initial rating of 70 percent, and no higher, for depression is granted. 




____________________________________________
D. JOHNSON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs